FILED
U.S. DIST. COURT
S. ... ... I.Y.

SEP 30 2015

CLERK
SO. DIST. OF GA

HARRIS BAKING COMPANY, f/k/a )
Regency Baking Company, )
                               )
     Plaintiff, )
                                 )
v.                         )      CASE NO. CV411-171
                                 )
DRAYPROP, LLC; MICHAEL BROWN; )
and MARLEY MANAGEMENT, INC.; )
                                 )
     Defendants. )
                                 )

## O R D E R

Before the Court is Defendants' Motion for Summary Judgment. (Doc. 43.) For the following reasons, Defendants' motion is **GRANTED**. Accordingly, Plaintiff's case is hereby **DISMISSED**. As a result, Plaintiff's Motion to Exclude Testimony (Doc. 44) is **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

### BACKGROUND

This case stems from Plaintiff leasing commercial retail space in the Drayton Tower building in Savannah, Georgia.[1] (Doc. 52, Attach. 1 at 1.) On December 29, 2006, Plaintiff entered into a lease agreement with Defendant

---

[1] For the purposes of this motion for summary judgment, the Court construes the facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 577-78 (1986). Because the Court only addresses Defendants' motions, all facts are construed in the light most favorable to Plaintiffs.

Drayprop, LLC. (Doc. 43, Attach. 1 at 2.) Defendant Marley Management, Inc. ("Marley") managed the property and was responsible for collecting Plaintiff's rent payments. (Doc. 52, Attach. 1 at 2-3.) Defendant Michael Brown has some ownership interest in both Defendants Drayprop and Marley. (Id. at 2.)

The lease agreement stated that

> Landlord has made no representations or warranties with respect to the Premises and no rights, easements, or licenses are required by Tenant by implication or otherwise except as may herein be expressly set forth. The Premises are leased to the Tenant in "As Is" condition except Landlord is to supply the following:
>
> 1. HVAC unit to space, electrical panel box and one electrical outlet;
> 2. Finished ready for paint perimeter walls;
> 3. Concrete floors stained and polished;
> 4. Complete façade with interior glass doors to hallway, if permissible; and
> 5. Open ceiling.

(Id.) Plaintiff affirmed in the lease that it was "fully acquainted with the nature and conditions of the Premises, including . . . the manner of construction and the conditions and state of repair of the Premises," and that the Premises were "suitable and adequate in all respects for any and all activities and uses which Tenant may elect to conduct thereon at any time during the term hereof."

(Doc. 43, Ex. C ¶ 6(c).) With respect to maintenance, the lease stated that

> Tenant shall be responsible for all forms of maintenance of, or replacement to the Premises, including without limitation, plate glass and the air conditioning, heating, lighting, plumbing (including water and sewer systems), electrical systems and equipment and Tenant shall cause the same to be maintained in good condition throughout the Term, ordinary wear and tear excepted.

(Id. ¶ 6(d).) Defendant Drayprop was "responsible for all forms of maintenance and repair to the exterior only of the Premises." (Id.)

According to Plaintiff, it began experiencing issues with the air conditioning soon after occupying the leased space. (Doc. 52, Attach. 1 at 3.) Plaintiff met with Defendants, who sent technicians to inspect the air conditioning system. (Id. at 4.) However, Plaintiff continued to experience periodic problems with the air conditioner. (Id.)

As a result, Plaintiff filed suit in the State Court of Chatham County, which was timely removed to this Court. (Doc. 1.) In its complaint, Plaintiff contends that it "was not provided basic services necessary to operate [] its leasehold: The air conditioning wouldn't work often times; The electrical service to the bakery would be spotty; The

3

heat wouldn't work often." (Doc. 1, Compl. ¶ 5.)[2] In their motion for summary judgment, Defendants contend that Defendant Brown cannot be held liable because he was acting at all times on behalf of the Defendants Drayprop or Marley. (Doc. 43, Attach. 1 at 7-8.) In addition, Defendants maintain that Plaintiff has failed to establish either a breach of contract or negligence claim against Defendants. (Id. at 8-10.)

In response, Plaintiff argues that Defendant Brown is liable under a corporate veil piercing theory. (Doc. 52, Attach. 1 at 6-9.) With respect to the lease agreement, Plaintiff claims that Defendants breached the lease agreement by failing to repair and maintain the air conditioning system. (Id. at 11.) Finally, Plaintiff contends that Defendants voluntarily undertook a duty to repair the air conditioning system, which they ultimately breached by failing to provide a reliable system. (Id. at 12.)

---

[2] To the extent Plaintiff contends that Defendants owed some duty concerning the common areas or exterior of Drayton Towers, the Court will not entertain these arguments. They are clearly beyond the allegations contained in Plaintiff's complaint.

I.   STANDARD OF REVIEW

According to Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears
> the initial responsibility of informing the
> district court of the basis for its motion and
> identifying those portions of the pleadings,
> depositions, answers to interrogatories, and
> admissions on file, together with the affidavits,
> if any, which it believes demonstrate the absence
> of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts that are material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933 (11th Cir. 1989).

6

## II. DEFENDANT BROWN

Plaintiff asserts that Defendant Brown can be held personally liable for the alleged breach and negligent repair. (Doc. 52, Attach. 1 at 6-10.) However, Plaintiff has not shown that Defendant Brown acted in his individual capacity as opposed to on behalf of Defendants Drayprop or Marley. Personal liability cannot attach to Defendant Brown because "[a] member of a limited liability company 'is not a proper party to a proceeding . . . against a limited liability company, solely by reason of being a member of the limited liability company.' " Yukon Partners, Inc. v. Lodge Keeper Grp., 258 Ga. App. 1, 6, 572 S.E.2d 647, 651 (2002) (quoting O.C.G.A. § 14-11-1107(j)). To pierce the LLC liability veil between a company and a member, a claim must go a step further and "show that the defendant disregarded the separateness of legal entities by comingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." Christopher v. Sinyard, 313 Ga. App. 866, 867, 723 S.E.2d 78, 80 (2012). Although the issue of veil piercing is typically for the jury to decide, summary judgment is appropriate if "there is no evidence sufficient to justify disregarding the corporate form." Id.

Here, Plaintiff has presented no facts that suggest either Defendants Drayprop or Marley ever served as the alter ego of Defendant Brown. Rather, Plaintiff merely offers several instances of Defendant Brown's name being included on a loan approval form in the name of Defendant Drayprop. (Doc. 52, Attach. 1 at 9.) Plaintiff attempts to make an issue out of a reference in form that Defendant Brown had previously conducted business with the bank. (Id.) Finally, Plaintiff points out that other companies in which Defendant Brown had financial interests were guarantors of the loan, namely Durbin Holdings, LLC, Brothers Trading Holding, LLC, and Washco, LLC. (Id.)

Even taken as true, however, these facts do not demonstrate a genuine dispute as to whether Defendant Brown ever acted on his individual behalf. It appears abundantly clear that Defendant Brown was acting simply as an employee or owner of separate and distinct legal entities. Indeed, Defendant Brown's actions are consistent with a member of a LLC executing documents on its behalf. In any event, Plaintiff has failed to point to any evidence that would permit a jury to conclude that Defendant Brown "disregarded the separateness of legal entities by comingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." Christopher, 313

8

Ga. App. at 867, 723 S.E.2d at 80. Accordingly, the Court can discern no reason to disregard a limited liability company member's rightful and normal immunity to personal liability in this case. As a result, Defendants are entitled to summary judgment with respect to Plaintiff's claims against Defendant Brown.

## III. BREACH OF CONTRACT

In Georgia, the elements for a breach of contract claim are (1) a breach of the contract; (2) damages that result from the breach; and (3) the damaged party has the right to complain about the contract being broken. Norton v. Budget Rent A Car Sys. Inc., 307 Ga. App. 501, 502, 705 S.E.2d 305, 306 (2010). "A breach occurs if a contracting party . . . fails to perform the engagement as specified in the contract . . . ." UWork.com, Inc. v. Paragon Techs., Inc., 321 Ga. App. 584, 590, 740 S.E.2d 887, 893 (2013). To determine whether a breach occurred, the Court looks first to the written contract.

In this case, Plaintiff contends that Defendants breached the lease agreement by failing to repair the air conditioning system. (Doc. 52, Attach. 1 at 11.) However, the lease agreement clearly states that "Tenant shall be responsible for all forms of maintenance of, or repair or replacement to the Premises, including without limitation

. . . the air conditioning . . . systems and equipment."
(Doc. 43, Ex. C ¶ 6(d).) Given this clear language and the
evidence in the record, the Court fails to see how
Defendants could have breached the lease agreement by
failing to makes repairs that they were not obligated to
perform.

Attempting to end run around the language of the lease
agreement, Plaintiff argues that Defendants were obligated
under the lease to repair the air conditioner because the
nonfunctioning equipment was located outside the premises.
(Doc. 52, Attach. 1 at 11-12.) While not entirely clear
from the record, Plaintiff appears to contend that the
equipment requiring repair was a water cooling tower
located on the roof of the building, to which it lacked
access. (Id. at 11.) Plaintiff reasons that because the
tower was located on the roof, it is a part of the exterior
of the building, for which Defendants were responsible for
maintenance and repair under the terms of the lease
agreement. (Id.)

Unfortunately, Plaintiff's argument finds no support
in the record. For example, Plaintiff contends that they
lacked access to the roof. (Id.) However, Plaintiff's
deposition testimony states only that Plaintiff's repairman
was not provided access to the roof most of the time, the

implication being that Plaintiff was not denied total access to the purportedly malfunctioning equipment. (Doc. 52, Ex. B 89:1-5.) Moreover, the lease provides that Plaintiff is responsible for the maintenance and repair of the air conditioning "system and equipment." (Doc. 43, Ex. C ¶ 6(d).) Even if the air conditioning included equipment located outside of the actual premises, the lease agreement still requires Plaintiff to repair and maintain the entirety of the air conditioning system.[3]

Plaintiff's argument concerning the equipment being part of the exterior of the building is equally unavailing. Under the terms of the lease, Defendants were responsible for "maintenance and repair to the exterior only of the Premises." (Doc. 43, Ex. C ¶ 6(d).) However, equipment located on the roof is not part of the exterior of the premises. Rather, it is located on the exterior. Therefore, the lease agreement does not obligate Defendants to maintain and repair that portion of Plaintiff's air conditioning system.

---

[3] The Court notes there is no evidence in the record that the allegedly malfunctioning water cooling tower was a single tower shared among all the building's occupants. While the record is somewhat silent, the Court is left with the understanding that the water cooling tower was part of the air conditioning system dedicated solely to Plaintiff's leased premises.

In any event, Plaintiff's argument and meager citations to the record fail to create an issue of material fact with respect to the lease. The plain language of the lease required Plaintiff, not Defendants, to repair and maintain the air conditioning system. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's claim for breach of contract.

## IV.    NEGLIGENT REPAIR

Plaintiff contends that Defendants voluntarily undertook repair of the air conditioning system, which they then performed negligently by failing to fully repair the system. (Doc. 52, Attach. 1 at 12.) In support of this position, Plaintiffs rely on Jadronja v. Bricker, 49 Ga. App. 37, 174 S.E.2d 251 (1934), and Hill v. Liebman, Inc., 53 Ga. App. 462, 186 S.E. 431 (1936), for the general proposition that a landlord who voluntarily makes repairs not required under the terms of the lease is liable for damages caused by improper repair. (Doc. 52, Attach. 1 at 12.) However, these cases are easily distinguishable.

First, the leases in both Jardonja and Hill were residential, not commercial. Furthermore, the repairs that were voluntarily undertaken addressed the safety of the leased premises. See Hill, 53 Ga. App. at 462, 186 S.E.2d at 431-32 (noting landlord agreed to repair rotting floor

of home); Jardonja, 49 Ga. App. at 37, 174 S.E.2d at 252 (discussing landlord's promise to repair roof). Finally, the court in Jardonja notes that "[t]he mere fact that the landlord has made repairs at the request of the tenant does not impose upon the landlord any obligation to continue to make repairs." 49 Ga. App. at 37, 174 S.E.2d at 252. Once the landlord completes the repair, it is under no continuing obligation to perform the same repair.

Even if Plaintiff's argument finds adequate support in Georgia caselaw, however, it has failed to point to any evidence in the record in support of its assertion that Defendants voluntarily undertook repair of the air conditioning system. This portion of Plaintiff's brief encompasses all of six sentences, one paragraph, and zero citations to the record. (Doc. 52, Attach. 1 at 12.) Earlier in Plaintiff's response, it does cite to deposition testimony of Defendant Marley's office manager, who states that she seems to remember Defendant Brown sending a technician to look at the system. (Doc. 52, Ex. C at 27:15-20.) However, this statement falls far short of creating an issue of fact concerning whether Defendants gratuitously promised to repair the air conditioning system.[4] In the

---

[4] Even assuming Defendants voluntarily undertook an obligation to repair the air conditioning system, Plaintiff

absence of any genuine issue of fact, Defendants are entitled to summary judgment with respect to this claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 43) is **GRANTED**. Accordingly, Plaintiff's case is hereby **DISMISSED**. As a result, Plaintiff's Motion to Exclude Testimony (Doc. 44) is **DISMISSED AS MOOT**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this _30th_ day of September 2014.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

points to no evidence in the record establishing that they performed that obligation negligently. The record establishes a periodic, not daily, problem with the air conditioning. (Doc. 52, Ex. D.) Plaintiff reported problems only 23 out of 675 days from November 2007 to September 2009. (Id.) While Plaintiff has failed to identify any gratuitous promise to repair the air conditioning system, the record indicates that Defendant likely completed any gratuitous repair, which they were then not obligated to repeat. See Jardonja, 49 Ga. App. at 37, 174 S.E.2d at 252.